IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA, for the        )
use and benefit of SCCB, INC.            )
d/b/a STEWART CONSTRUCTION COMPANY,      )
                                         )
            Plaintiff,                   )
                                         )
    v.                                   )        1:08CV260
                                         )
P. BROWNE & ASSOCIATES, INC.,            )
THE BROADBAND COMPANIES, LLC,            )
BROADBAND CONSTRUCTION                   )
SERVICES, LLC, and ARCH INSURANCE        )
COMPANY,                                 )
                                         )
            Defendants.                  )


**MEMORANDUM OPINION AND ORDER**


THOMAS D. SCHROEDER, District Judge

     Before the court is the post-trial motion for interest and
attorneys' fees by Plaintiff SCCB, Inc., d/b/a Stewart
Construction Company ("SCCB"). (Doc. 95.) Defendants The
Broadband Companies, LLC, Broadband Construction Services, LLC
(collectively "Broadband"),[1] P. Browne & Associates, Inc. ("P.
Browne"), and Arch Insurance Company ("Arch") (collectively
"Defendants") all oppose the motion. (Docs. 97-99.) For the
reasons below, the motion is granted.

---
[1] Broadband Construction Services, LLC, was dissolved on April 12, 2007,
but its obligations are currently held by The Broadband Companies, LLC.

## I. BACKGROUND

This case arose out of the construction of a metal building and tactical van pad for the United States Navy at the Naval Reserve Center in Greensboro, North Carolina. Defendant P. Browne was the prime contractor with the Navy on the project. Pursuant to the Miller Act, 40 U.S.C. § 3131 et seq., P. Browne, as principal, and Defendant Arch, as surety, issued a payment bond for the protection of persons supplying labor and materials. Defendant Broadband was a subcontractor on the project and subsequently contracted part of its work to Plaintiff SCCB (the "SCCB-Broadband subcontract"). SCCB contended that it had performed under the contract but had been wrongfully terminated, and it sought recovery of money damages for amounts allegedly owed.

Though SCCB initially brought several claims against Defendants, the case was narrowed during a jury trial that began on July 12, 2010. Only SCCB's breach of contract claim against Broadband and related claim against Arch and P. Browne under the Miller Act were submitted to the jury. The jury found that Broadband's termination of its subcontract with SCCB constituted a material breach and awarded damages of $260,267.10. The jury also found P. Browne and Arch liable to SCCB on the payment bond in the same amount.

Now the court must determine whether SCCB may recover

attorneys' fees and interest and, if so, in what amounts and against whom.

## II.  ANALYSIS

### A.  Attorneys' Fees

The SCCB-Broadband subcontract provides in part:  "If collection of any amount due requires any legal counsel or procedures, owner [Broadband] agrees to pay reasonable attorney's fees, which shall not be less than fifteen percent (15%) of the principal and interest then due, and all other costs of collection."  (Doc. 96 at 3.)  The Defendants contend that this provision is unenforceable under North Carolina law.  Arch and P. Browne raise two additional arguments: First, even if the provision is enforceable under state law against Broadband, federal case law prohibits awards of attorneys' fees to successful Miller Act claimants.  Second, North Carolina law does not make nonparties, such as P. Browne and Arch, liable under a contract between two other parties.  These arguments will be addressed in turn.

#### 1.  North Carolina Statutory Authority

Under North Carolina law, attorneys' fees may not be awarded, even pursuant to an unambiguous contractual agreement, without statutory authority.  <u>Stillwell Enters., Inc. v. Interstate Equip. Co.</u>, 300 N.C. 286, 289, 266 S.E.2d 812, 814-15 (1980).  By statute, however, "[o]bligations to pay attorneys'

3

fees upon any note, conditional sale contract or other evidence of indebtedness" are valid and enforceable. N.C. Gen. Stat. § 6-21.2. The dispute in this case focuses on whether a construction contract is "evidence of indebtedness." SCCB argues that North Carolina case law answers this question in the affirmative, relying on Stillwell, the leading North Carolina decision on this subject.

In Stillwell, the North Carolina Supreme Court upheld an award of attorneys' fees upon a contract for the lease of a pushloading road scraper. 300 N.C. at 287-88, 294-95, 266 S.E.2d at 813, 818. In interpreting section 6-21.2, the court noted that the statute became effective on the same date as the North Carolina Uniform Commercial Code and "was intended to supplement those principles of law generally applicable to commercial transactions." Id. at 293, 266 S.E.2d at 817. The court concluded that "G.S. 6-21.2 clearly validates a new form of contractual remedy" and that, "being remedial, [it] 'should be construed liberally to accomplish the purpose of the Legislature and to bring within it all cases fairly falling within its intended scope.'" Id. (quoting Hicks v. Albertson, 284 N.C. 236, 239, 200 S.E.2d 40, 42 (1973)). The court determined that "evidence of indebtedness" refers to "any printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay

money." Id. at 294, 266 S.E.2d at 817. Applying this definition, the court held that the parties' lease agreement was "obviously an 'evidence of indebtedness,'" because the contract recognized a "legally enforceable obligation by plaintiff-lessee to remit rental payments to defendant-lessor as they become due, in exchange for the use of the property which is the subject of the lease." Id. at 294, 266 S.E.2d at 818.[2]

Nothing in Stillwell's analysis or its broad definition of "evidence of indebtedness" suggests any exception for construction contracts or provides any basis for distinguishing between lease agreements and construction contracts. The SCCB-Broadband subcontract recognized a legally enforceable obligation by Broadband to remit payments to SCCB as they became due, in exchange for SCCB's construction services. Thus, the subcontract appears to fall within Stillwell's definition of "evidence of indebtedness."

Defendants rely principally upon a pre-Stillwell decision by the North Carolina Court of Appeals, Yeargin Construction Co. v. Futren Development Corp., 29 N.C. App. 731, 225 S.E.2d 623 (1976). In Yeargin, the court held that a written contract to construct condominiums was *not* "evidence of indebtedness" under

---

[2] Stillwell also found that the contract was in writing and executed by the parties obligated under its terms. 300 N.C. at 294, 266 S.E.2d at 818. In this case, Broadband does not dispute that it signed the written subcontract. Arch and P. Browne, however, point out that they did not sign the agreement. This issue is addressed below.

section 6-21.2, reasoning that "while all questions of public policy are for the determination of the Legislature, a statute will not be construed to alter established principles of public policy founded on good morals unless that intent is clearly and unequivocally expressed in the statute." Id. at 734, 225 S.E.2d at 625. Defendants point out that Stillwell cited Yeargin without expressly overruling it, see Stillwell, 300 N.C. at 290, 292 n.2, 266 S.E.2d at 815, 816 n.2, which they argue implies that there remain certain categories of contracts that are not "evidence of indebtedness," including simple construction contracts.

It is true that the Supreme Court in Stillwell cited Yeargin, but the context of the citations casts doubt on Defendants' argument. Stillwell cited Yeargin twice — the first time only for the basic proposition that contractual agreements to pay attorneys' fees cannot be founded in the common law but must rather find statutory authorization. 300 N.C. at 290, 266 S.E.2d at 815. More importantly, in assessing the meaning of "evidence of indebtedness," the Stillwell court observed in a footnote that the North Carolina Court of Appeals had rendered conflicting decisions: some decisions apparently adopted a broad view of section 6-21.2, while others adopted a narrower interpretation. Id. at 292 n.2, 266 S.E.2d at 816 n.2. Stillwell cited Yeargin as an example of the latter. See id.

Insofar as _Stillwell_ ultimately adopted a broad definition of "evidence of indebtedness" and reversed the court of appeals which had relied partly on _Yeargin_, however, it is unlikely that the Supreme Court intended _Yeargin_'s holding to survive the _Stillwell_ ruling.

This conclusion is buttressed by the fact that since the _Stillwell_ decision in 1980, the North Carolina Supreme Court has never cited _Yeargin_ again, nor has the court of appeals cited _Yeargin_ for its holding on section 6-21.2. Moreover, Defendants do not mention the sole articulated reasoning underlying _Yeargin_'s holding: the need to strictly construe a statute that strays from "established principles of public policy founded on good morals." 29 N.C. App. at 734, 225 S.E.2d at 625. _Stillwell_, on the other hand, held that section 6-21.2 must be "construed liberally." 300 N.C. at 293, 266 S.E.2d at 817. Thus, the only basis upon which _Yeargin_'s holding rested is inconsistent with _Stillwell_'s articulated rationale.

Defendants also point to two recent court of appeals decisions, _Delta Environmental Consultants of North Carolina v. Wysong & Miles Co._, 132 N.C. App. 160, 510 S.E.2d 690 (1999), and _Forsyth Municipal Alcoholic Beverage Control Board v. Folds_, 117 N.C. App. 232, 450 S.E.2d 498 (1994), purportedly showing that "evidence of indebtedness" excludes construction contracts. Neither is on point.

In <u>Delta</u>, the court refused to award attorneys' fees upon a contract between sophisticated parties to formulate and implement an environmental cleanup plan. The court simply applied the principle that attorneys' fees will not be awarded without statutory authority, and it held that this situation did not warrant an exception to that principle. 132 N.C. App. at 167-68, 510 S.E.2d at 695. Whether recovery was warranted under section 6-21.2 does not appear to have been raised, "evidence of indebtedness" was not discussed by the court, and <u>Stillwell</u> was mentioned only in passing for the uncontroverted rule that recovery of attorneys' fees requires statutory authorization. <u>See</u> <u>id.</u>

In <u>Folds</u>, the court reversed an award of attorneys' fees upon a contract for the sale of real property. Defendants point out that this case originated in the seller's failure to construct a driveway as required by the real estate contract. But the court's analysis consisted of a reiteration of the general requirement of statutory authority and a cursory statement that "we know of no basis . . . for the allowance of attorney's fees in a dispute arising out of a contract for the sale of real property." 117 N.C. App. at 238, 450 S.E.2d at 502. Again, there was no discussion of section 6-21.2 or the phrase "evidence of indebtedness," and <u>Stillwell</u> was cited only for the proposition that contractual provisions for fees require

statutory authorization.[3]  <u>See</u> <u>id.</u>

The most applicable recent cases are <u>Lawrence v.</u>
<u>Wetherington</u>, 108 N.C. App. 543, 423 S.E.2d 829 (1993), and <u>G.L.</u>
<u>Wilson Building Co. v. Thorneburg Hosiery Co.</u>, 85 N.C. App. 684,
355 S.E.2d 815 (1987), both cited by SCCB.  <u>Lawrence</u> upheld under
section 6-21.2 an award of attorneys' fees on a contract for
installation of vinyl siding, 108 N.C. App. at 545-46, 549, 423
S.E.2d at 830-31, 832-33, while <u>G.L. Wilson</u> held under section 6-
21.2 that an attorneys' fees provision in a contract for the
construction of a hosiery manufacturing facility was enforceable,
85 N.C. App. at 684, 687-90, 355 S.E.2d at 816, 817-19.
Defendants correctly point out that each opinion focused upon
another issue — <u>Lawrence</u> upon the effect of a blank space in a
written contract where the price should be, and <u>G.L. Wilson</u> upon
the arbitrators' authority to award attorneys' fees — and that
the opinions do not expressly analyze whether the contracts are
"evidence of indebtedness" (instead apparently assuming so).

---

[3]  <u>Folds</u> also noted that the North Carolina Court of Appeals had
recently articulated exceptions to this general rule in <u>Edwards v.</u>
<u>Edwards</u>, 102 N.C. App. 706, 713, 403 S.E.2d 530, 534 (1991) (finding
that "the general rule disallowing attorneys' fees unless statutorily
authorized does not encompass this situation where the parties
voluntarily contracted for indemnification for such fees" in a
separation agreement), and <u>Carter v. Foster</u>, 103 N.C. App. 110, 114
17, 404 S.E.2d 484, 487 89 (1991) (noting that while the court has
recognized section 6 21.2 to be "a far reaching exception to the well
established rule against attorney's fees obligations," an attorneys'
fees provision in a settlement agreement was not "upon any note . . .
or other evidence of indebtedness" under section 6 21.2 but was
nevertheless enforceable as an exception to the rule).

However, neither point diminishes the significance of the fact that in both recent court of appeals decisions addressing attorneys' fees in the context of a construction contract, contractual attorneys' fees were expressly allowed under the authority of section 6-21.2.[4]

Considering <u>Lawrence</u> and <u>G.L. Wilson</u>, the dubious precedential value of <u>Yeargin</u>, and the broad holding in <u>Stillwell</u>, along with the other points discussed above, this court holds that the SCCB-Broadband subcontract is "evidence of indebtness" under North Carolina law. Consequently, SCCB is entitled to recover attorneys' fees from Broadband under the subcontract provision in the amount of $39,040.07.[5]

### 2. Miller Act

SCCB contends that it is also entitled to recover attorneys' fees from P. Browne and Arch on their payment bond under federal case law interpreting the Miller Act, 40 U.S.C. § 3131 <u>et</u> <u>seq</u>.

---

[4] SCCB also cites <u>Hedgecock Builders Supply of Greensboro v. White</u>, 92 N.C. App. 535, 375 S.E.2d 164 (1989), which held that a credit application creating an open account to purchase construction supplies was "evidence of indebtedness." Although the supplier later agreed to perform construction work for the purchaser and this was charged to the same account, the applicability of this opinion to simple construction contracts is debatable. The other cases cited by the parties are not helpful. <u>Bromhal v. Stott</u>, 341 N.C. 702, 462 S.E.2d 219 (1995), deals with a marital separation agreement, and <u>Baxley v. Jackson</u>, 179 N.C. App. 635, 634 S.E.2d 905 (2006), addresses attorneys' fees in a civil contempt proceeding. Neither opinion mentions section 6 21.2.

[5] SCCB claims that it has fulfilled the notice requirements in section 6 21.2(5), and no defendant has challenged this. Stewart also acknowledges that its recovery is limited by the fifteen percent (15%) cap in section 6 21.2(1). Finally, SCCB seeks attorneys' fees as a percentage of the principal due: $260,267.10. (Doc. 95.)

P. Browne and Arch argue just the opposite — that federal case law bars recovery of attorneys' fees by a Miller Act claimant.

Both parties begin by analyzing F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116 (1974), which directly addressed whether to award attorneys' fees to a successful Miller Act plaintiff. The Supreme Court first reiterated the "American Rule" governing attorneys' fees in federal courts: attorneys' fees are generally not recoverable unless a statute or enforceable contract provides for them.[6] Id. at 126 (citing Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717 (1967)). The Court noted that there was no contractual provision for attorneys' fees in the case, id., and it held that the Miller Act itself does not provide for them. Specifically, the Court's holding overturned a court of appeals ruling that attorneys' fees should be awarded under the Miller Act on the basis of California "public policy" where the parties' contract was silent. Id. at 126-27. The Court strongly rejected the idea that the Miller Act itself incorporates the laws and policies of all fifty states on attorneys' fees. Id. at 127-28.

---

[6]   P. Browne and Arch claim that F.D. Rich Co. "did not adopt [the 'American Rule'] as a rule for Miller Act cases." (Doc. 97 at 8.) But the opinion's analysis begins with the statement that the rule "govern[s] the award of attorneys' fees in litigation in the federal courts." 417 U.S. at 126. And one year after F.D. Rich Co., the Court cited the case as one "reaffirm[ing] the general rule that, absent statute or enforceable contract, litigants pay their own attorneys' fees." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975).

P. Browne and Arch argue that F.D. Rich Co. bars any reliance upon contractual provisions as well, because the enforceability of such provisions will depend upon state law. This argument is not persuasive. The Court's opinion clearly applies to circumstances where "[t]here was no contractual provision concerning attorneys' fees," id. at 126, and holds only that in the absence of contractual authority a Miller Act plaintiff may not rely directly upon state statutes or policies to recover attorneys' fees.

The Fourth Circuit addressed a situation in which there was a contractual provision in United States ex rel. Maddux Supply Co. v. St. Paul Fire & Marine Insurance Co., 86 F.3d 332 (4th Cir. 1996)(per curiam), and it is this decision that is most applicable to SCCB's dispute with P. Browne and Arch. In Maddux, a supplier of a subcontractor on a federal construction project sued the general contractor and its surety under the Miller Act. Id. at 334. The supplier and subcontractor had conducted business under the terms of a credit application for several years before the subcontractor entered into a contractual relationship with the general contractor. Id. at 334, 336. The credit application contained a provision requiring the subcontractor to pay all costs of collecting any outstanding amount owed to the supplier, including "reasonable attorneys' fees." Id. at 334. After a bench trial, the district court

12

awarded damages to the supplier, including attorneys' fees, and the court of appeals affirmed the entire award. Id.

The Maddux court noted holdings from other circuits that attorneys' fees are recoverable if they are part of the original contract between subcontractor and supplier. Id. at 336; see, e.g., United States ex rel. Se. Mun. Supply Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, 876 F.2d 92, 93 (11th Cir. 1989) (per curiam) (holding attorneys' fees recoverable against contractor and surety under Miller Act pursuant to provision in subcontract); United States ex rel. Carter Equip. Co. v. H.R. Morgan, Inc., 554 F.2d 164, 165-66 (5th Cir. 1977) (per curiam) (same); accord United States ex rel. Reed v. Callahan, 884 F.2d 1180, 1184-86 (9th Cir. 1989) (same). The court then concluded:

> The rationale of those decisions — that attorney's
> fees and interest may be "sums justly due" under
> the Miller Act[7] — is consistent with this court's

---

[7] Before 2002, the relevant provision of the Miller Act was located at 40 U.S.C. § 270b(a) and stated that a deserving Miller Act plaintiff "shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him" (emphasis added). In 2002, the Miller Act was moved from 40 U.S.C. § 270a et seq. to 40 U.S.C. § 3131 et seq., and its language was altered. See Act of Aug. 21, 2002, Pub. L. No. 107 217, 116 Stat. 1062. The above provision now reads: ". . . may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due." 40 U.S.C. § 3133(b)(1) (emphasis added). Section 5(b)(1) of the 2002 act states that the act made no substantive change in the law and may not be construed as having done so. See United States ex rel. Tenn. Valley Marble Holding Co. v. Grunley Constr., 433 F. Supp. 2d 104, 116 n.3 (D.D.C. 2006)("The changes in language merely resulted from consolidating related provisions of law, the pursuit to achieve uniformity within the title, or to conform to common contemporary usage."). Therefore,

13

> rulings that contractors and their sureties are
> obligated to pay amounts owed by their
> subcontractors to suppliers. . . . Accordingly, if
> [the supplier] was entitled to interest and
> attorney's fees under its contract with [the
> subcontractor], it may recover interest and fees
> from [the general contractor] and [its surety].

_Maddux_, 86 F.3d at 336 (citation omitted).  Under _Maddux_, if SCCB is entitled to attorney's fees under its subcontract with Broadband, it may recover those fees from P. Browne and Arch. The only limitation _Maddux_ places upon this holding is that the attorneys' fees provision must be "part of the contract between [supplier] and [subcontractor] _for the [federal] project_."  _Id._ (emphasis added).  This condition is met.

P. Browne and Arch make no attempt to distinguish _Maddux_. Rather, they try to undermine its authority by arguing that _Maddux_ is "of little assistance," "has virtually no analysis of attorneys' fees," and "flies in the face of" P. Browne and Arch's interpretation of _F.D. Rich Co._  (Doc. 97 at 9-10.) Unfortunately for P. Browne and Arch, however, a review of the record in _Maddux_ makes clear that the Fourth Circuit was well aware of _F.D. Rich Co._  Indeed, _F.D. Rich Co._ was the centerpiece around which the parties' arguments revolved.  _See, e.g._, Brief of Appellants at 13-15, _Maddux_, 86 F.3d 332 (No. 95-2446); Reply Brief of Appellants at 1-4, _Maddux_, 86 F.3d 332 (No. 95-2446). It is simply untrue that the _Maddux_ court could have rendered its

despite the removal of the "sums justly due" language quoted by _Maddux_, the holding of _Maddux_ remains good law.

opinion unaware of the Supreme Court's analysis in <u>F.D. Rich Co.</u>

<u>Maddux</u> is controlling circuit authority and is fully consonant with <u>F.D. Rich Co.</u> The court concludes, therefore, that SCCB may recover attorneys' fees from P. Browne and Arch.

### 3. **Contractual Liability of Nonparties**

Finally, P. Browne and Arch contend that they are not parties to the SCCB-Broadband subcontract and under North Carolina law cannot therefore be held liable under it. The general contractor and surety in <u>Maddux</u> presented just this argument, however, and the court rejected it.

In <u>Maddux</u>, the attorneys' fees provision was included in a credit application submitted by the subcontractor to the supplier almost three years before the subcontractor entered into a contractual relationship with the general contractor. <u>See</u> <u>Maddux</u>, 86 F.3d at 336; Brief of Appellants at 6-7, <u>Maddux</u>, 86 F.3d 332 (No. 95-2446). The general contractor and surety argued that they were not parties to the credit application, that they had no knowledge of the application during their course of dealing with the subcontractor, and that they had no established relationship with either the subcontractor or the supplier when the application was signed. Brief of Appellants at 6, 13-14, <u>Maddux</u>, 86 F.3d 332 (No. 95-2446). They then argued that an award of attorneys' fees against them pursuant to the credit application would violate "the most fundamental principle of

contract law, that a party is not and cannot be bound by a contract between two unrelated parties." Reply Brief of Appellants at 3, Maddux, 86 F.3d 332 (No. 95-2446).

The court rejected this argument. It concluded that "[r]egardless of the origin of the provision, it was part of the contract between [supplier] and [subcontractor] for the [general contractor's] project,[8] and [supplier] may recover." Maddux, 86 F.3d at 336. In fact, the court held that the general contractor and its surety were liable for the attorneys' fees as "sums justly due" under the credit application even though the district judge did not hold the subcontractor itself responsible for those fees (because of its cooperation in attempting to resolve the dispute). Id.

It is therefore apparent that P. Browne and Arch are bound by the attorneys' fees provision in the SCCB-Broadband subcontract, and the court so holds.

**B. Interest**

The parties stipulated during trial that SCCB could possibly recover interest under one of several theories but left to the court the determination of which applied. Pertinent to the claims submitted to the jury, the parties stipulated that if the North Carolina statutory rate (8%) applied, interest would begin

---

[8] The district court had found that the credit application was "part of the contract on the [general contractor's] project," and the court of appeals upheld this factual finding under a "clearly erroneous" standard. Maddux, 86 F.3d at 336.

on the date of termination, February 7, 2008; if interest applied at the subcontract rate, it would begin forty-five days after the date of termination.

SCCB seeks to recover both prejudgment and postjudgment interest against all Defendants, jointly and severally, on the principal amount awarded at trial at the rate of eighteen percent (18%) per year "or the highest rate allowed by law." (Doc. 95 at 1.) The arguments as to each Defendant will be addressed in turn below.

### 1. Broadband

The SCCB-Broadband subcontract provides: "Invoices not paid within 45 days may be subject to a one and one half percent (1½%) finance fee per month. If collection of any amount due requires any legal counsel or procedures, [Broadband] agrees to pay reasonable attorney's fees . . . . [SCCB] shall be entitled to collect interest at eighteen percent (18%) per annum on the full amount of any Judgment obtained." (Doc. 96 at 3.) SCCB's claims for prejudgment and postjudgment interest will be addressed separately.

### a. Prejudgment Interest

SCCB claims that the subcontract entitles it to prejudgment interest at a rate of one and one-half percent per month (18% per year) on the $260,267.10 the jury found SCCB was owed as of February 7, 2008, the date it was wrongfully terminated. As

noted, the parties have stipulated that if SCCB is entitled to interest at the subcontract rate, the interest will accrue from forty-five days after the date of termination (i.e., March 23, 2008).  SCCB points to <u>Barrett Kays & Associates v. Colonial Building Co. of Raleigh</u>, 129 N.C. App. 525, 500 S.E.2d 108 (1998), which stated:

> [A]s a general proposition in an action for breach of contract, the principal amount awarded is to bear interest 'from the date of the breach . . . until the judgment is satisfied.' . . . Interest is to be assessed at the legal rate of 8 percent . . . unless the parties have provided otherwise by agreement, in which event the agreement shall prevail.

<u>Id.</u> at 529, 500 S.E.2d at 112 (citations omitted) (quoting N.C. Gen. Stat. § 24-5(a)).

Broadband argues that the subcontract does not address prejudgment interest.  Rather, it argues first that the provision awarding SCCB interest of 18% "on the full amount of any Judgment obtained" addresses only postjudgment interest, and second that the "finance fee" of one and one-half percent is a "discretionary liquidated damages provision, or penalty."  (Doc. 99 at 3.)  Thus, Broadband argues, the North Carolina statutory rate of 8% should apply.

Even assuming the first argument to be correct, the second argument lacks merit.  Broadband provides very little support for its contention that the contractual "finance fee" is "a penalty for non-payment, not interest."  (<u>Id.</u> at 4.)  Broadband points to

N.C. Gen. Stat. § 24-11(a) (on revolving credit charges), which places an 18% per year cap upon certain "finance charges." Broadband argues that this demonstrates that "finance fees" are not governed by the prejudgment interest statute (N.C. Gen. Stat. § 24-5(a)) and are thus "not interest."

Section 24-11(a) does not address "finance charges" alone, however, but rather "<u>interest</u>, finance charges or other fees." N.C. Gen. Stat. § 24-11(a) (emphasis added). Furthermore, if "finance fees" are "finance charges" (which Broadband appears to assume), Broadband does not explain why they should be distinguished from "carrying charges," which <u>Barrett Kays</u> held to be "interest" for the purposes of the prejudgment interest statute, N.C. Gen. Stat. § 24-5(a).[9] <u>See</u> 129 N.C. App. at 527, 529, 500 S.E.2d at 110, 112; <u>cf.</u> <u>United States v. Am. Mfrs. Mut. Cas. Co.</u>, 901 F.2d 370, 373 (4th Cir. 1990) (per curiam) (noting that "[t]he purpose of awarding pre-judgment interest is compensatory, not penal"). Finally, even if "finance fees" are different from both "interest" and "carrying charges," Broadband does not show why the "finance fee" provision should not be enforced or how the result would be different under these circumstances. Thus, the court finds that the jury award of

---

[9]  The SCCB Broadband provision is very similar to the provision at issue in <u>Barrett Kays</u>: "Payment of each invoice will be due within fifteen days of the invoice date.  Past due amounts will be assessed a carrying charge of 1.5 percent per month."  129 N.C. App. at 527, 500 S.E.2d at 110.

$260,267.10 should bear prejudgment interest at the subcontract rate of one and one-half percent per month as of March 23, 2008.

### b.    Postjudgment Interest

SCCB also seeks postjudgment interest at the subcontract rate of 18% per year pursuant to N.C. Gen. Stat. § 24-5(a), which provides: "If the parties have agreed in the contract that the contract rate shall apply after judgment, then interest on an award in a contract action shall be at the contract rate after judgment."    The SCCB-Broadband subcontract provides: "[SCCB] shall be entitled to collect interest at eighteen percent (18%) per annum on the full amount of any Judgment obtained." (Doc. 96 at 3.)    Broadband offers no argument against an award of postjudgment interest pursuant to this provision.    In fact, Broadband admits that this provision applies to postjudgment interest (Doc. 99 at 5), and the court finds that SCCB is entitled to postjudgment interest at the subcontract rate of 18%.[10]

---

[10]   It should be noted that 28 U.S.C. § 1961 establishes a uniform federal rate for postjudgment interest "on any money judgment in a civil case recovered in a district court." Id. § 1961(a); see Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 633 (4th Cir. 1999) (applying the federal statutory postjudgment interest rate in a diversity breach of contract action).    However, parties may contractually agree to a different rate.  See Society of Lloyd's v. Reinhart, 402 F.3d 982, 1004 (10th Cir. 2005) (requiring "clear, unambiguous and unequivocal language" to contract for a different postjudgment interest rate); Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 101 02 (2d Cir. 2004) (same); Cent. States, Se. & Sw. Areas Pension Fund v. Bomar Nat'l, Inc., 253 F.3d 1011, 1020 (7th Cir. 2001) ("It is well established that parties can agree to an interest rate other than the standard one contained in 28 U.S.C. § 1961."); Carolina Pizza Huts, Inc. v. Woodward, 67 F.3d 294 (4th Cir. 1995) (unpublished

### 2. P. Browne and Arch

SCCB also seeks prejudgment and postjudgment interest at the subcontract rate against P. Browne and Arch. Each form of interest will be addressed separately.

#### a. Prejudgment Interest

The parties agree that since the Miller Act is silent as to prejudgment interest, applicable state law applies. See United States v. Am. Mfrs. Mut. Cas. Co., 901 F.2d 370, 372-73 (4th Cir. 1990) (per curiam). The parties then look to North Carolina statutes and case law to determine whether prejudgment interest may be recovered on a surety payment bond. P. Browne and Arch argue that a surety payment bond is a "penal bond" and that North Carolina law prohibits recovery of prejudgment interest on a "penal bond" and allows postjudgment interest only at the legal rate (8%). N.C. Gen. Stat. § 24-5(a), (a1).

The parties's briefs, however, do not discuss Maddux, which is the controlling case once again.[11] In Maddux, the

---

table decision); see also BP Prods. N. Am., Inc. v. Youssef, 296 F. Supp. 2d 1351, 1354 56 (M.D. Fla. 2004) (holding that the prevailing party must include its claim for interest at the contractual rate in the pleadings or the pretrial stipulation and order). The parties' briefs do not address this issue, but because the SCCB Broadband subcontract clearly and unambiguously provides for a specific postjudgment interest rate, SCCB has sought interest at this rate since the filing of the Complaint (see Doc. 1 ¶¶ 14, 19; Doc. 1 at 10), and the contractual provision is valid under state law, the court finds that SCCB and Broadband have successfully contracted around 28 U.S.C. § 1961.

[11] The parties appear to assume that Maddux applies only to attorneys' fees, but the opinion clearly applies to interest as well. See 86 F.3d at 336.

subcontractor's credit application with the supplier stated that "a 1½% monthly service charge will be added to all accounts not paid within 30 days after due date." 86 F.3d at 334. Applying the same reasoning it had used for attorneys' fees, the court held that since the supplier was entitled to interest from the subcontractor under the credit application, it could recover this interest from the general contractor and its surety as a "sum justly due" under the Miller Act. The losing parties in Maddux argued, as P. Browne and Arch argue here, that prejudgment interest was not recoverable under state law. See Brief of Appellants at 17-20, Maddux, 86 F.3d 332 (No. 95-2446); Reply Brief of Appellants at 6-7, Maddux, 86 F.3d 332 (No. 95-2446). But the court of appeals rejected this argument. Thus, the court finds that SCCB may recover prejudgment interest from P. Browne and Arch at the subcontract rate of one and one-half percent per month.

### b.   Postjudgment Interest

While Maddux speaks of "interest" throughout, the parties' briefs indicate that only prejudgment interest was at issue. See Brief of Appellants at 17 n.4, Maddux, 86 F.3d 332 (No. 95-2446). The general contractor and surety in Maddux conceded that postjudgment interest was recoverable by the supplier under 28 U.S.C. § 1961, which establishes a uniform rate of postjudgment interest for all civil actions in federal court. See Hitachi

<u>Credit Am. Corp. v. Signet Bank</u>, 166 F.3d 614, 633 (4th Cir. 1999); <u>Forest Sales Corp. v. Bedingfield</u>, 881 F.2d 111, 111-13 (4th Cir. 1989). Thus, <u>Maddux</u> does not directly address postjudgment interest in the context of the Miller Act.

One of the only federal cases to do so is <u>United States ex rel. Canion v. Randall & Blake</u>, 817 F.2d 1188 (5th Cir. 1987), in which the court awarded prejudgment interest at the subcontract rate but postjudgment interest at the uniform federal rate. <u>Id.</u> at 1193-94. However, as in <u>Maddux</u>, there was no contractual provision for postjudgment interest. Thus, this case is of little assistance.

Because SCCB is entitled to postjudgment interest under its subcontract with Broadband, the court finds that interest to be part of the "sum justly due" under the subcontract. There is nothing in <u>Maddux</u>'s reasoning that would limit it to prejudgment interest. Therefore, the court concludes that postjudgment interest is recoverable against P. Browne and Arch at the subcontract rate (18%).[12]

## III. CONCLUSION

For the reasons set forth above,

IT IS THEREFORE ORDERED that Plaintiff's Motion for

---

[12] P. Browne and Arch concede that they must pay postjudgment interest to SCCB but they limit their argument solely to the contention that the North Carolina statutory rate (8%) should apply instead of the subcontract rate. (Doc. 97 at 3; Doc. 98 at 1.) No party argues that the federal rate should apply.

Attorneys' Fees and Interest (Doc. 95) is GRANTED, and Plaintiff is entitled to recover of Defendants P. Browne & Associates, Inc., The Broadband Companies, LLC, Broadband Construction Services, LLC, and Arch Insurance Company prejudgment interest in the amount of $123,344.35, postjudgment interest at the rate of 18%, and reasonable attorneys' fees in the amount of $39,040.07.

The court finds that the decisional process would not be significantly aided by oral argument.  IT IS THEREFORE ORDERED that Defendants' Joint Motion for Oral Argument (Doc. 100) is DENIED.


                              /s/ Thomas D. Schroeder
                              United States District Judge

November 9, 2010